SYBIL, The (FISHER v.). See Case No. 4,-824.

## Case No. 13,707.

### In re SYKES.

[10 Ben. 162; 24 Int. Rev. Rec. 414 (391); 26 Pittsb. Leg. J. 64; 18 Alb. Law J. 416; 7 Amer. Law Rec. 370.] [1]

District Court, S. D. New York. Nov. 11, 1878.

WITNESS—CONTEMPT OF COURT—COMPULSORY PRODUCTION OF BOOKS AND PAPERS OF CORPORATIONS—FOREIGN CORPORATION—POWERS OF OFFICERS—WHAT BOOKS AND PAPERS TO BE DEEMED "IN CUSTODY" OF OFFICER.

1. A foreign railroad corporation, organized under the laws of Illinois and other states, having its principal office in Chicago, had an office in New York, where certain books and papers were kept under the control of the vice president, who was also the secretary and treasurer of the corporation. By the established practice of the corporation, these books and papers when no longer required here for present use were sent to the Chicago office. The secretary being served with a subpœna duces tecum, in an action pending in this court, requiring him to produce some of these books and papers which had been so forwarded to the Chicago office four years before the service of the subpœna, failed to produce the same; and it appeared on his examination that the officer at Chicago, the assistant secretary, who had the immediate charge of the books and papers, was a co-ordinate officer, not under the control and direction of the witness, and that, by the by-laws of the company defining the powers of its officers and by the practice of the corporation, the witness could not command the delivery to him of the books and papers to be produced in obedience to the subpœna, although they probably would be sent to him at his request as required for use by him in the business of the corporation. The by-laws provided among other things, that the secretary should "safely keep all documents and papers which shall come into his possession" and "truly keep the books and accounts of the company appertaining to his office, so as at all times to show the real condition of the company's affairs," and should also keep the stock books and surrender certificates of stock. And the laws of Illinois (Rev. St. Ill. p. 283, § 13) required correct books of account of all the business of the corporation to be kept at its principal office, subject to the inspection of its stockholders. Upon motion to punish the witness as for contempt in not producing the books and papers, held, that the same were not in his custody within the meaning of section 868 of the New York Code of Civil Procedure, which provides that "the production upon a trial of a book or paper belonging to or under the control of a corporation may be compelled in the like manner as if it was in the hands or under the control of a natural person" and that "for that purpose a subpœna duces tecum, or an order as the case requires, must be directed to the president or other head of the corporation or the officers thereof in whose custody the book or paper is."

2. The statute relates to foreign as well as to domestic corporations.

3. The statute requires the witness only to produce books and papers in his custody, and does not require him to obtain the custody of books and papers not actually in his custody, but which he is able to get into his custody in order to produce them in court.

4. Whether consistently with the law of Illinois these books and papers could be removed from the Chicago office, quere.

5. Whether the statute requires a witness in a court of the United States in any case to travel

[1] [Reported by Robert D. Benedict, Esq., and Benj. Lincoln Benedict, Esq., and here reprinted by permission. 24 Int. Rev. Rec. 391, and 26 Pittsb. Leg. J. 64, contain only partial reports.]

more than one hundred miles from the place of trial for the purpose of bringing into court books and papers in his custody beyond that distance or to take the risk of having them sent to him, if beyond that distance, without going for them personally, quere.

[In the matter of Martin L. Sykes, held for contempt.]

S. L. Woodford, Dist. Atty., and R. M. Sherman, Asst. Dist. Atty., for plaintiffs.

J. S. Lawrence, for witness.

CHOATE, District Judge. In the case of United States v. Samuel J. Tilden [Case No. 16,520], which has been noticed for trial at the present term, one Martin L. Sykes has been subpœnaed as a witness for the plaintiffs under a subpœna duces tecum directing him to produce certain stock ledgers of the Chicago & Northwestern Railroad Company, also the stock ledger and book of the minutes of the meeting of the directors of the Peninsular Railroad Company, and certain vouchers and receipts for payments of money to the defendant or to one Smith for him by the Chicago & Northwestern Railroad Company, for services as trustee from 1861 to 1873. Upon the first day of the term the witness appeared, but did not bring with him the books and papers described in the subpœna, whereupon an order was granted against the witness, ordering him to show cause why he should not be punished for a contempt in disobeying the subpœna. Upon the return day of the order the witness appeared and presented an affidavit to the effect that he is vice president of the Chicago & Northwestern Railroad Company; that said company is a corporation organized and existing under the laws of Illinois, Wisconsin and Michigan, having its principal office at Chicago; that it also has a branch office at 52 Wall street, New York, kept for the convenience of transacting its Eastern business; that the books and vouchers specified in the subpœna are not now and have not been for four years in his custody; that he has no authority as an officer of the company to order the said books to be brought to New York for the purpose of this case, and that he has no right to exercise any personal control over the said books; that the president of the company resides at Chicago; that he has no knowledge of and has never seen the book of minutes of the Peninsular Railroad Company; that all vouchers of every kind for disbursements at the New York office have been returned monthly to the principal office at Chicago where they are examined and disposed of under the direction of the president; that he had upon the issue of the order to show cause against him telegraphed that fact to the general solicitor of the company at Chicago, to which he had received a reply by telegraph to the effect that he, after consulting with one Hewitt, an officer of the company in Chicago, had already refused to have any books sent to New York.

The witness was then on motion of the district attorney sworn upon his voir dire and the following facts appeared: The witness, besides being vice president of the Chicago & Northwestern Railroad Company, became its secretary and treasurer in 1873 and has since continued to hold those offices. Since he became secretary in 1873, he has had charge and control of the office of the company in New York, when the president is not here. There is an assistant secretary under him in the New York office and another assistant secretary in Chicago. The stock ledgers while in current use have been and are now kept at the New York office. The stock ledgers of this company, referred to in the subpœna, were, while entries were being made in them, kept at the New York office. All the entries in the stock ledgers are made under the direction and supervision of the witness as secretary and have been so since he has held that office. The assistant secretary at Chicago is a co-ordinate officer, not under the control and direction of the witness; the entries in the stock ledgers called for by the subpœna were all made in New York and relate to transactions that took place in New York. These stock ledgers were sent to Chicago in 1874, in pursuance of a practice, which has always obtained in this company, of sending to the central office of the company all books kept at New York, when they are filled up and cease to be in current use. The purpose of sending them there is not alone for convenience of storage, but that they may be at the central office of the company. The witness further testified that he had no reason to believe that the books would be sent to him if he sent for them; that he thought if he had occasion to use them at the office and telegraphed to that effect to the president they might be sent to him.

It further appeared that the meetings of the directors were sometimes held in New York and sometimes in Chicago; that the election of officers took place in Chicago. According to the by-laws the officers of the company include president, first and second vice president, treasurer, secretary, assistant treasurer and assistant secretary. Article 5 provides that "the whole affairs of the company shall be managed and directed" by the board of directors. Article 6 provides that the president among other duties "shall have a general care, supervision and direction of the affairs of the company and of the employees, and shall have such powers and perform such duties as may from time to time be conferred upon him or be prescribed by the board of directors." Article 7 provides among other things as follows: "It shall be the duty of the secretary to safely keep all documents and papers which shall come into his possession," "and truly keep the books and accounts of the company appertaining to his office so as at all times to show the real condition of the

company's affairs, and shall present statements thereof when required by the board; he shall keep books upon which transfers of stock may be made by any stockholder, or his attorney, duly constituted in writing, also a stock ledger and certificate book, prepare new certificates upon the transfer of shares and surrender of the old certificates, and keep a register of all certificates issued." There is no by-law defining the duties of assistant secretary. The laws of Illinois provide that "it shall be the duty of the directors or trustees of every stock corporation to cause to be kept at its principal office or place of business in this state (Illinois) correct books of account of all its business, and every stockholder in such corporation shall have the right, at all seasonable times, by himself or by his attorney, to examine the records and books of account of the corporation."

The question to be determined is whether upon this state of facts the stock ledgers and vouchers of this corporation described in the subpoena are "in the custody" of the witness within the meaning of section 868 of the Code of Civil Procedure, which is as follows: "The production upon a trial, of a book or paper, belonging to or under the control of a corporation, may be compelled, in the like manner as if it was in the hands or under the control of a natural person. For that purpose a subpoena duces tecum, or an order made as prescribed in the last section as the case requires, must be directed to the president or other head of the corporation, or to the officers thereof, in whose custody the book or paper is."

This section of the Code, which is new, and designed to remedy a defect in the existing law, by which corporations were practically exempt from producing their books in court, is highly beneficial to the purposes of justice. There are often cases where the presence of the books themselves in court is the only way in which certain facts sought to be proved can be established, as, for instance, where it is necessary to refresh the recollection of witnesses by exhibiting to them the original entries. In such cases copies may prove insufficient. This section should therefore have a fair and liberal construction, with a view to the purposes designed to be accomplished by it. I do not think, therefore, that it should be construed as limited to domestic corporations, as is suggested by the learned counsel for the witness. If a foreign corporation sees fit for reasons of convenience, profit or necessity, to keep books within the jurisdiction of the courts of New York, I see no reason why those books should not be equally accessible for the purposes of justice here with like books kept by a domestic corporation. The case is equally within the mischief sought to be corrected by the statute, and there is no reason in the policy of the law of New York for giving foreign corporations an exemption from the effects of this statute.

But upon the facts proved I am clearly of opinion that the books and vouchers called for are not, within the meaning of the Code, "in the custody" of the witness. The evidence is sufficient to show that this corporation has removed these books and papers from the New York office to the Chicago office, and that this has been done in pursuance of a standing rule of the company, making the central office of the company in Chicago the place where books not in current use and all vouchers are kept. The books and papers were effectually removed thereby from the custody of the officer in charge of the New York office, and placed under the custody of the officer or officers in charge of the Chicago office. Such a rule is a reasonable and proper regulation for a corporation to make, a part of whose business is done in foreign states. There is nothing in the by-laws to prevent the making of such a rule, nor is it necessary that it should be enacted in the form of a by-law, or passed by a vote of the board of directors. It is shown by the long-continued practice of the corporation to be the rule. The seventh article of the by-laws does not in terms, or by necessary implication, put all the books and papers of the corporation into the exclusive custody of the secretary. He is required to keep safely all that come to his possession. But at any time the corporation may itself remove any of the books and papers not actually in use by the secretary, and put them in the custody of any other proper officer or employee of the company, and this was done in respect to these books four years ago. The witness, upon the testimony, can not claim, by virtue of his office and without the consent of the president or other officers of the company, to take these books and papers from the office in Chicago and bring them to New York. They can not, therefore, be said to be in his custody, because they are not so under his power and control that of his own will, and without obtaining the consent of others, he can take them and bring them into court. If they were in his office in New York, the corporation could, of course, make no rule or regulation as to their being kept there that would or should prevent his bringing them into court on this subpoena, because in that case whatever the regulation might be, they would be in his custody, he being in charge of the office where they are; but the books being in another place which is not in his charge, they can not be said to be constructively in his custody, unless they are in that place under his immediate control, or unless he has plenary power to take them and bring them away. It is said he should be required to use all the measures shown to be in his power to get them, and that he could get leave to bring them here

by asking for it; but it does not appear that he could get such leave, except for some purpose connected with the company's business, and, if he could do so, this section does not impose any such duty upon the witness. Clearly the subpœna does not require him to obtain the custody of books in order to produce them, but simply to produce books and papers that are in his custody.

I have not found it necessary to consider whether, under the laws of Illinois, the books are required to be kept at the office in Chicago, nor whether, the subpœna from a United States court running only a hundred miles, the witness can be required to go to a place more than a hundred miles to get books and papers to bring them into court, or must run the risk of having them sent to him without going personally to get them.

This is not a case of a person expecting to be a witness disabling himself from producing papers by sending them away. It is not, therefore, necessary to consider whether the laws provide any remedy in such a case. Motion for attachment denied.